UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRYAN COLLINS                              CIVIL ACTION

        Plaintiff,

                                           NO: 14-234

VERSUS

MARLIN GUSMAN, INDIVIDUALLY                SECTION: R(2)
AND AS SHERIFF FOR THE PARISH
OF ORLEANS, STATE OF
LOUISIANA

        Defendant.


**ORDER**

Before the Court is defendant Marlin Gusman's motion for summary judgment.[1] The Court grants defendant's motion as to plaintiff's federal civil rights claim because the undisputed evidence fails to show a violation of plaintiff's First Amendment rights. The Court declines to exercise supplemental jurisdiction over plaintiff's state-law claims and dismisses the state-law claims without prejudice.


**I.  Background**

The Orleans Parish Sheriff's Office hired plaintiff as a deputy sheriff in 2009 and assigned him to guard duty at Orleans Parish Prison.[2] The Sheriff's Office provided plaintiff with a

---

[1] R. Doc. 11.

[2] R. Doc. 13 at 1.

copy of the department's Policies and Procedures Manual and the Criminal Sheriff's Handbook which prohibit, *inter alia*, both the release of non-public information without prior authorization and the possession of a mobile phone in jail facilities.[3] Plaintiff signed a form acknowledging his receipt and review of the manual and handbook on September 8, 2009 and March 23, 2012, respectively.[4]

On June 6, 2013, an inmate at the Conchetta facility of Orleans Parish Prison stabbed another inmate approximately twenty times.[5] The Sheriff's Office's Special Operations Department was assigned to investigate the crime, and they identified inmate Edward Dean as the culprit. On June 11, 2013, Dean was arrested and charged with aggravated battery.[6]

Plaintiff was on duty on June 6, 2013 when inmate Dean committed the crime at the Conchetta facility. Plaintiff took a picture of the crime scene with his cell phone and, displeased with the Sheriff's Office's charging decision, provided the photograph to the Southern Poverty Law Center.[7] The photograph later appeared

---

[3] R. Doc. 11-4 at 1-2.

[4] R. Doc. 11-6 and 11-7.

[5] R. Doc. 13 at 2.

[6] R. Doc. 11-1 at 1.

[7] R. Doc. 13 at 2.

on the Times-Picayune's website Nola.com.[8]  Plaintiff asserts that
he shared the crime scene photograph because his superiors failed
to address his complaints regarding "poor prison conditions,
inadequate facilities, staffing and supervision" at Orleans Parish
Prison.[9]

Once Orleans Parish Sheriff's Office officials became aware
that a photograph of the crime scene had been provided to the
media, they launched an investigation to determine the source of
the picture.[10]  Sheriff's Office officials identified plaintiff as
the source of the leak and, on or about October 22, 2013, told
plaintiff that he could not return to work.[11]  Shortly thereafter
plaintiff resigned from his position and brought this suit under 28
U.S.C. § 1983 claiming that defendant retaliated against plaintiff
in violation of his First Amendment rights.  Plaintiff also asserts
three causes of action under Louisiana law.  Defendant now moves
for summary judgment on all of plaintiff's claims.[12]

## II.  Legal Standard

---

[8] Plaintiff admits that he is responsible for leaking the
picture.  R. Doc. 13 at 5.

[9] *Id.*

[10] R. Doc. 11-1 at 2.

[11] R. Doc. 13 at 3.

[12] R. Doc. 11.

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)(internal quotations omitted); *see also Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991)(internal quotations omitted). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or

"showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.; Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III. Discussion

### A.   *Plaintiff's First Amendment Retaliation Claim*

It is well-established that the government may not condition public employment on a basis that violates the First Amendment

rights of its employees. *Connick v. Myers*, 461 U.S. 138, 142 (1983). Government employees "have not relinquished the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest." *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 465 (1995) (internal quotations omitted). At the same time, the government is entitled to manage employees, including hiring, firing, and disciplining them, like other employers. "[T]he government as employer indeed has far broader powers than does the government as sovereign." *Waters v. Churchill*, 511 U.S. 661, 671 (1994). To determine the validity of restraints on public employees' speech, the Court must "arrive at a balance between the interest of the [employee], as a citizen, in commenting upon matters of public concerns and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ. of Township High School Dist.*, 391 U.S. 563, 568 (1968).

To determine whether a public employer's action has impermissibly infringed upon an employee's free speech rights, courts in the Fifth Circuit employ a five step analysis. *Winn v. New Orleans City*, Civ. A. No. 12-1307, 2014 WL 790870, at *3 (E.D. La. Feb. 26, 2014) (citing *Gibson v. Kilpatrick*, 734 F.3d 395, 400 (5th Cir. 2013)). Thus, to establish a First Amendment retaliatory discharge claim, a plaintiff must prove:

> (1) that he suffered an adverse employment decision; (2) that he spoke as a private citizen and not as a

government employee pursuant to official duty; (3) that the speech involved a matter of public concern; (4) that his interest in speaking outweighed the government's interest in the efficient provision of public services; and (5) that the speech precipitated the adverse employment decision. *Id.*

1. *Whether Plaintiff Suffered an Adverse Employment Decision*

"Adverse employment decisions include discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011) (internal quotations omitted).  Plaintiff submits evidence that he was discharged on or about October 23, 2013.[13]  Thus, plaintiff has satisfied the first element.

2. *Whether Plaintiff Spoke as a Citizen or Government Employee*

The Supreme Court opinion in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), provides the starting point for analysis under the second prong.  Ceballos worked as a deputy district attorney in the Los Angeles County District Attorney's Office.  When he discovered what he believed to be inaccuracies in an affidavit supporting a search warrant, he wrote a memo to his supervisor suggesting that the DA's office not prosecute the crime.  The supervisor responded by transferring Ceballas and refusing to promote him.  Ceballas sued, arguing that his memo was protected speech under the First Amendment.  Reversing the Ninth Circuit and ultimately rejecting Ceballos' claim, the Supreme Court stated that "when public

---

[13] R. Doc. 13-1 at 3.

employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

Here, plaintiff's "speech" was the sharing of a photograph with a third-party, the Southern Poverty Law Center.[14]  This speech is not only unrelated to plaintiff's official duties as a prison guard at Orleans Parish Prison, but the taking and sharing of the photograph was also prohibited by sheriff's department policy.[15] Moreover, although plaintiff took the picture while he was on-duty, plaintiff's speech--the sharing of the photograph to the Southern Poverty Law Center--occurred outside of the workplace. Accordingly, the Court finds that plaintiff spoke as a citizen rather than pursuant to his official duties.  *See Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014) ("The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the

---

[14] "While photographs are not the classic 'speech' that the First Amendment safeguards, they nonetheless fall within the ambit of the First Amendment if they communicate some idea." *S.N.B. v. Pearland Indep. Sch. Dist.*, Civ. A. No. 13-441, 2014 WL 2207864, at *11 (S.D. Tex. May 28, 2014) (internal citations omitted).

[15] R. Doc. 11-4 ("The Orleans Parish Sheriff's Office strictly prohibits the release of non-public data without express authorization . . . .  The Orleans Parish Sheriff's Office strictly prohibits the possession of any mobile phone by a deputy in the jail facilities.").

scope of an employee's duties, not whether it merely concerns those duties."); *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008) (when "a public employee takes his job concerns to persons outside the work-place in addition to raising them up the chain of command at his workplace, then those external communications are ordinarily not made as an employee, but as a citizen") (citing *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006)).

### 3. Whether Plaintiff's Speech Involved a Matter of Public Concern

Whether speech involves a matter of public concern is a question of law. *Coughlin v. Lee*, 946 F.2d 1152, 1156 (5th Cir. 1991). A court answers this question by examining the content, form, and context of the speech. *Jordan v. Ector Cnty.*, 516 F.3d 290, 295 (5th Cir. 2008). Although this inquiry is necessarily fact-specific, certain bright-line rules have emerged. Indeed, it is well-established that "public employees' speech reporting official misconduct, wrongdoing, or malfeasance on the part of public employees involves matters of public concern." *Branton v. City of Dallas*, 272 F.3d 730, 745 (5th Cir. 2001). This is especially true "when [the speech] concerns the operation of a police department." *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 191-92 (5th Cir. 1988).

Here, plaintiff provided the Southern Poverty Law Center, and eventually Nola.com, with pictures of a crime scene at Orleans Parish Prison. Plaintiff contends that the picture was one of many

disclosures he made to the Southern Poverty Law Center regarding "prison conditions, inadequate facilities, staffing and supervision, all of which resulted in inadequate or no investigations" of inmate violence at the prison.[16]  It is well-established that "the conditions in this Nation's prisons are a matter that is both newsworthy and of great public importance." *Pell v. Procunier*, 417 U.S. 817, 830 n.7 (1974).  *See also Freitag*, 468 F.3d at 545 ("[T]he proper administration of our prisons generally is undoubtedly of great public interest . . . .").  Accordingly, the Court finds that plaintiff's distribution of the crime scene photograph relates to a matter of public concern.

> *4. Whether Plaintiff's Interest in Speaking Outweighed the Sheriff's Office's Interests as an Employer*

The determination of whether an employee's interest in speaking on a matter of public concern outweighs the government's interest in the efficient provision of public services, commonly called *Pickering* balancing, is "legal in nature and [is] for the court to resolve." *Branton,* 272 F.3d at 739.  Even if a public employee speaks as a citizen on a matter of public concern, his speech is not *per se* protected by the First Amendment. *Jordan*, 516 F.3d at 295.  This is because government employers enjoy "a significant degree of control over their employees' words and actions" to ensure to efficient provision of government services.

---

[16] R. Doc. 13-1 at 2.

*Garcetti*, 547 U.S. at 418.   The government employer's discretion is not unbounded, however, as "the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations."   *Id.*   Thus, courts must balance "the individual and societal interests that are served when employees speak as citizens on matters of public concern [with] the needs of government employers' attempting to perform their important public functions."   *Id.* at 420.   Pertinent considerations in this balancing test include "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."   *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).   A court must also give substantial weight to a government employer's interest in enforcing office policy.   *See Connick,* 461 U.S. at 153 n.14.   Furthermore, "because police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary employer."   *Nixon v. City of Houston*, 511 F.3d 494, 498 (5th Cir. 2007) (internal quotations omitted).

At the outset, the Court acknowledges the substantial interest both the plaintiff and the public have in the content of plaintiff's speech.   As discussed above, plaintiff's leak of the

11

crime scene photograph addressed a matter of public concern, namely prison conditions at Orleans Parish Prison. Although First Amendment protection is not dependent upon the "social worth" of the ideas expressed, "the nature of the communication is relevant to the balancing of interest of the employee as a citizen against the interest of the governmental unit." *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 629 F.2d 993, 1003 (5th Cir. 1980). Here, plaintiff's First Amendment interest is especially strong because plaintiff's employment with the Sheriff's Office enabled him to witness the crime. *See Lane*, 134 S. Ct. at 2379 ("[S]peech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment."). Given the substantial First Amendment interest at stake, a heightened showing of government interest is required to justify plaintiff's termination. *Lane*, 134 S. Ct. at 2381 ("We have also cautioned, however, that a stronger showing of government interests may be necessary if the employee's speech more substantially involves matters of public concern.") (internal quotations omitted).

In this case, plaintiff's interest in commenting on matters of public concern, although significant, is outweighed by the government's interest in the efficient provision of government services. As an initial matter, plaintiff's speech was made

possible by his violation of the Sheriff's Office's prohibition on the possession of cell phones within the prison.[17]   Plaintiff's distribution of the photograph without prior authorization constituted a second violation of departmental policy.[18]   These violations were especially egregious given that the photograph at issue depicted evidence and the crime scene in a then-open criminal prosecution.   *Cf. Lane*, 134 S. Ct. at 2381 (finding government interest lacking because "[t]here is no evidence, for example, that . . . Lane unnecessarily disclosed any sensitive, confidential, or privileged information").   *See also Delano v. City of Buffalo*, No. 10-CV-9228S, 2014 WL 4273340, at *8 (W.D.N.Y. Aug. 29, 2014) ("[T]he release of [crime scene] photographs without authorization both violated internal rules and would clearly have a disruptive effect on the *espirit de corps* of the police force.").   The Sheriff's Office's interest in addressing these violations of official policy is substantial, *Connick*, 461 U.S. at 153 n.14, and sanctioning the Sheriff's Office for enforcing its policies would undermine the office's ability to maintain employee discipline. *Rankin*, 483 U.S. at 388.   These considerations demand even more

---

[17]  R. Doc. 11-4 at 2.

[18]  *Id.* at 1 ("The Orleans Parish Sheriff's Office strictly prohibits the release of non-public data without express authorization.  This policy exists because of the need to maintain integrity of all criminal investigations conducted by the Sheriff's Office and to protect the identity of victims and witnesses until such time that the materials become discoverable under the laws of the State of Louisiana.").

weight because of the prison setting in which the violations of official policy occurred. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

The Sheriff's Office also produced uncontroverted evidence that plaintiff's distribution of the photograph caused significant disruption to Orleans Parish Prison operations. Once prison officials became aware that a photograph of the crime scene had leaked to the media, the Sheriff's Office was forced to "reallocat[e] . . . limited and critical resources to conduct an investigation into the unauthorized disclosure in order to protect the integrity of this and future investigations."[19] The Sheriff's Office also reasonably concluded that failure to address plaintiff's violations of departmental policy could disrupt workplace harmony and jeopardize future investigations. *See Connick*, 461 U.S. at 168 ("[A]n employer need not wait until the destruction of workplace relationships is manifest before taking action."); *Nixon*, 511 F.3d at 499 ("Such . . . conduct smack[s] of insubordination, and it is entirely reasonable for the [police department] to predict that such insubordination and likely acts of future insubordination would harm [the department's] ability to

---

[19] R. Doc. 11-4 at 2.

maintain discipline and order in the department, morale within the department, and close-working relationships between Nixon, his fellow officers, and his supervisors."); *Tedder v. Norman*, 167 F.3d 1213, 1215 (8th Cir. 1999) (finding that police department's interest in "preventing disruption" outweighs individual officer's interest in speech).

In sum, the Court finds that plaintiff's speech violated departmental policy, impaired discipline by Sheriff's Office officials, and interfered with the regular operations of Orleans Parish Prison.  Thus, the Court holds that the Sheriff's Office's interest in the efficient provision of services outweighs plaintiff's interest in the speech and, therefore, that plaintiff's distribution of the crime scene photograph is not protected by the First Amendment.  In so concluding, the Court is  "mindful of the paramilitary structure of the police department and the greater latitude given their decisions regarding discipline and personnel regulations." *Nixon*, 511 F.3d at 494.  Because the Court finds that plaintiff's speech is not protected by the First Amendment, defendant's motion for summary judgment on plaintiff's federal civil rights claim is granted.

### B. Plaintiff's State Law Claims

The Court has determined that defendant is entitled to summary judgment on plaintiff's only claim arising under federal law. Defendant, however, also seeks summary judgment on plaintiff's

claims arising under state law.  Thus, the Court must consider whether to continue to exercise supplemental jurisdiction over plaintiff's remaining state-law claims.  *See* 28 U.S.C. § 1367.  A district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In addition to the statutory factors, the Court must also balance the factors of judicial economy, convenience, fairness, and comity.  *Smith v. Amedisys, Inc.*, 298 F.3d 434, 446 (5th Cir. 2002).  The Court has "wide discretion in determining whether to retain supplemental jurisdiction over a state law claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993).  Still, the "general rule" is to decline to exercise jurisdiction over pendent state-law claims when all federal claims have been eliminated prior to trial. *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

Here, the Court has dismissed all the claims over which it had original jurisdiction.  Only state-law claims remain, and the Court

16

has no independent basis for jurisdiction over them.  The Court has not yet addressed the merits of these claims, and as they exclusively involve issues of state law, principles of comity weigh in favor of allowing a state forum to adjudicate them.   The Court therefore finds that the rule counseling against the exercise of supplemental jurisdiction over state-law claims when no federal claims remain applies in this case, and it dismisses plaintiff's state-law claims without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment on plaintiff's First Amendment retaliation claim.   The Court declines to exercise its supplemental jurisdiction as to plaintiff's state law claims and dismisses the state law claims without prejudice.

New Orleans, Louisiana, this 30th day of March, 2015.

_Sarah Vance_

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE